May it please the Court, I am Richard Curtis on behalf of Petitioner Nicoleta Maria Lezan. The immigration judge denied Ms. Lezan's request for asylum and for withholding of removal on four grounds. First was credibility. The second was a lack of evidence of past persecution. The third was lack of evidence of a well-founded fear of future persecution. And the fourth was that it would be reasonable for her to relocate elsewhere in Romania. I will go through these very briefly, and I would like to spend the bulk of my time discussing the prong of past persecution for reasons that I will elaborate. As for credential, the judge immediately determined that Ms. Lezan was not credible based on, amazingly enough, her appropriate demeanor, that she would not be combative enough, not be able to stand up to any police offenses, and basically would be demure and take it. Therefore, he discounted the fact that these events happened. As to the second point, evidence of past persecution, despite the evidence that the police beat Ms. Lezan unconscious on three separate occasions, sexually assaulted her twice, and then threatened her with, if she ever continued to proselytize, she would be raped, despite all of this, the judge did not find evidence of severe harm such as to raise to the level of past persecution. Okay. Third, he rejected the notion that she had shown any well-founded fear of future persecution, despite the fact that country Pentecostals and other Protestant Pentecostals are routinely discriminated against. Kagan. Counsel, I have a sort of procedural question for you. Roberts. Yes. Kagan. Let's assume that we agree with you on the first two points, that is, that the agency's adverse credibility finding is unsupported by substantial evidence and that past persecution occurred. Obviously, the opposing side won't agree with that, but let's assume that for the moment. When we get to future persecution, wouldn't we have to send it back for the agency to reconsider it in light of what would then become a presumption in favor of your client? In other words, they looked at it without the presumption because they found no past persecution, but if there were past persecution, it would have to be viewed through a different lens. Could we do that here or would we have to send that back? Roberts. I'm glad you raised that issue, Your Honor. Basically, in this case, in the underlying case, the immigration judge raised the issue of a well-founded fear of persecution. It was presented before the Court and argued, and the judge made a finding on it. Kagan. Yes, but made it through what in my hypothetical is an erroneous legal standard. I'm not sure if I'm making my question clear, but if there's no past persecution, it's up to the government to disprove it. So they looked at it, as I understood what was going on, they looked at it through the not-so-favorable- to-your-client way of looking at it. Roberts. Exactly. In fact, the government here improperly shifted the burden. Kagan. Right, but then since they've never looked at it through the correct legal standard, how could we do that in the first instance? Roberts. You could do it by looking at the record of the evidence that was presented. Kagan. Does Ventura allow us to do that? Roberts. Yes. Kagan. Why? Roberts. The government does not have the chance of raising the issue twice if it has, in fact, been raised and discussed. The record would be no more complete because the judge, in fact, did address it. In other words, the matter is already on the record. Kagan. Well, we thought that in Thomas, and we just got reversed again. So I guess I'm sensitive to knowing when it is, if the agency has looked at an issue, but through an incorrect legal standard, whose job it is to have that persuaded. Roberts. It would be the government's job, basically, to raise evidence to reverse the presumption if evidence were there to support it. And they have not done so over here. Now, hanging over all of these things, the fact that she could real – also the issue of whether she could reasonably relocate to – in Romania, the judge determined that because no State action was involved and that the police were not agents of the government, that there was no need to go further. She could relocate in Romania, continue her proselytizing activities, and report any future difficulties to the police. Hanging over the entire analysis is the judge's insistence that for some reason Ms. Lezon resided in Dobrik. There is nothing in the record that suggests that Ms. Lezon In the judge's mind, this was an alleged haven to which she could relocate, even though she lived in Bistria. For this reason, his determinations concerning credibility, past persecution – excuse me, credibility, well-founded fear of future persecution, and also relocation are inextricably entwined with this matter. Dobrik. So I would like to move on now to severe harm. The record is clear and detailed that Petitioner suffered severe harm. She was beaten by villagers while being cursed, attacked and beaten to unconsciousness by the police, who made slurs concerning her evangelical activities and also warned her that she should seize them. She was arrested, beaten to unconsciousness again, and sexually molested. On yet another occasion, the police threatened her, went out to see her, molested her sexually, and then threatened her with rape should she continue her evangelical activities. Given the fact that this is a protected ground of religion, I'm going to move on to the next prong. I do not see how any reasonable finder of fact could state that there was not severe harm in this case. As for a protected ground that she was a Pentecostal, so each of the attacks that she detailed all were a direct result of her proselytizing, and the people who beat her made constant reference to the fact that she was a Pentecostal slut, that she was a heretic, and the police stated she must stop evangelizing. Finally, going on to government agency and action, in this instance it was the police who spearheaded the persecution. And where the judge got the idea that, in fact, she could raise this issue, despite the fact that State department documents and country conditions state that if anyone goes above someone's head in order to report renegade activity by the police, that in fact it is not renegade activity by the police, that the police often harass proselytizers and others, and that reporting to the police is either futile or simply makes it worse. So having established a prima facie case for eligibility for asylum and withholder of withdrawing, I would submit that there is no need to go on to remand, given the evidence is clear that she cannot, despite Romanian law stating that there is a right to freedom of religion, it is not respected in the case of evangelical Protestants,   and that this hostility is, in fact, enforced through State action. Thank you. You have about half a minute left. Okay. I will reserve that for any last minutes for rebuttal, Your Honor. Good morning, Your Honors. May it please the Court, my name is Melissa Nyman-Kelting and I represent the Attorney General. It's the government's position that Petitioner has failed to meet her heavy burden of demonstrating that the evidence compels a finding that she was credible or eligible for the relief she requests. Even after three opportunities to present her claim to an asylum officer, the immigration judge, and the Board of Immigration Appeals, the agency nonetheless determined that she was not credible and ineligible for relief. Well, the BIA didn't do much of anything, did it? They did affirm with her opinion, Your Honor. So we didn't give it. We don't treat that as being with you. That's true, Your Honor. But she did get her process before the Board as well. I would like to address Judge Graber's question about the remand issue first off. Well, actually, I want to take you through it a little bit step by step. I want you to first assume that the credibility determination is not supported by evidence because that's where my legal questions come up next. If the credibility is established, why isn't what happened past persecution under cases like Krotova, why wouldn't that be approximately the same events? Could you say the case again? I'm sorry, Your Honor. Krotova. I don't know if that's how you pronounce it. K-r-o-t-o-v-a. I'm not familiar presently with the facts of that case, but I can't speak comparatively. If Your Honor would like to give me a quick rendition of the facts, I'd be happy to analyze, but I can also speak. Well, it's a religious discrimination case in which the person was slapped around and called a lot of bad names related to her religion. It was a different religion, but that is not pertinent. And treated very much the way this person asserts that she was treated. As far as her past persecution on account of her religion. Yes. And the court, this Court held that there was past persecution on account of religion. Well, here there, before we even get to the issue of past persecution, Your Honor, because it is true she has attested that she was detained by these two village police and that she was slapped on three occasions to the point where she fainted all in this seven-hour detention and that they did make slurs against her based on her religion. And her ability to practice her religion was curtailed, which was also true in the other case. Well, in this case, Your Honor, the government's position is that looking at the facts in their entirety, here we have a very specific instance that did occur, but over a course she began practicing her religion. I believe she was baptized in January of 1999. And there were instances where she was able to go to this very specific village, Gandia or Gandia, where she was evangelizing. Two instances in July where she had no problem going. The main instance was this last time in July of 2001 where she did go to a prayer meeting. And the altercation actually started with villagers, and the police got involved when she confronted them about their refusal to stop the fight. But the immigration judge did make a finding in this case that the arrest, the detention, if you will, the slaps and the abuse that Petitioner did suffer, while no one's condoning what happened, that it did not rise to the level of persecution in this case. Next step, if we disagree with that, and if she were entitled to a presumption because of past persecution, a presumption of a reasonable fear of future persecution, then what do we do? Which is my remand question. Is that a Ventura remand, or do we look at the material in the record? What's your view of what we should do next? As you mentioned, the recent Supreme Court case in Gonzales v. Thomas, and it's the government's position that under this Court's decision in GUO, I'm going to spell it for you, it's G-U-O, and the citation is 361 F. 3rd 1194, that in a similar situation where the adverse credibility, in your hypothetical, if the adverse credibility were reversed, where if the Court here were to find that no reasonable fact finder could fail to conclude that the treatment that Ms. Lasan received is persecution, past persecution, here it would have to go back. That's actually, that was actually what happened in the Crotova case as well. It was remanded under Ventura. Under Ventura, and again, and this Court's holding in Chen as well, that you're exactly right, that the presumption would switch, and it would be the government's burden to demonstrate that she, despite the presumption of a well-founded fear of future persecution, that it would overcome that presumption with evidence as far as country conditions, and especially the issue that was discussed to some extent, but again, not in the same framework, the issue of whether she could relocate within Romania based on the fact that she does still have family there, she has friends there, despite the fact that she may or may not have to register her moving with a government agency. We're talking about two village police officers who, after five years, may or may not have any continuing interest in Petitioner. However, while that is all on the record, it was not in the framework of it being the government's burden to rebut the presumption. So the government's position, to answer your question, would be under the case law that it should go back to the agency if the Court were to reverse both the adverse credibility finding and the finding that there was no past persecution. If that's the Court's inclination, it would need to send it back to the agency for a decision in the first instance. This may be based on what the Court has been discussing a point, but I feel it's as it's a jurisdictional issue, I would like to raise it, even though it was not raised in our briefs, and I apologize for that. And I would like to give the Court an opportunity to consider it at this time as far as the jurisdictional requirement of exhaustion, specifically with the credibility findings. While it's not raised in our briefs, it — I'm prepared to discuss it today, or if the Court is interested in — Sotomayor, is exhaustion something that can be waived? Isn't exhaustion something that can be waived? If the Court, under Spencer Enterprises v. U.S., the Court has jurisdiction to consider its jurisdiction at any time, because if it's — I understand that, but I'm asking whether this is truly jurisdictional in the sense of having no Article III power over something or whether it is more in the nature of a waiver, a waivable affirmative defense to preservation of an issue. It would be the government's position that because it's a statutory jurisdictional requirement under 8 U.S.C. 1252d sub 1, the statute explicitly requires an applicant or Petitioner to exhaust all administrative remedies. And even at this late hour, because it is a jurisdictional argument that cannot be waived, the government would submit that the Court could still take it under consideration. But in fairness to the parties, as it is in this late hour, I would propose if, for the Court's convenience, a very short, limited supplemental briefing on the issue of exhaustion as far as the specific adverse credibility grounds, which were not raised to the board below, therefore, the board did not have an opportunity in the first instance to address the city of Dobrick, the demeanor finding that has been raised both in the Petitioner's brief and at argument before this Court. But I'll leave that to the Court's discretion. But wasn't this a summary affirmance? It was, Your Honor. They did affirm with that opinion, but who is to say whether they would have issued a decision under 3.1e, I believe it's 5, where they could have given additional reasons, either supporting, supplementing, or sending it back and saying this isn't enough? Because these grounds weren't specifically raised. But again, I understand because it's being raised at this late hour, if the Court doesn't want to take the time to discuss it now, I'm putting it out there because it is a jurisdictional issue that the Court can still consider and should still consider as it goes to the Okay. Any further questions? Thank you. Okay. If the Court has nothing further, I would note that it's the government's position that Petitioner has not met her burden to overturn the adverse credibility finding or the past persecution finding. As discussed, if the Court does determine that despite the jurisdictional issue, that no reasonable fact finder could fail to conclude that Petitioner is credible and that she did establish past persecution, it must therefore, under Ventura, Chen, and most recently Gonzales v. Thomas, remand to the agency for a finding in the first instance of a rebuttable presumption. Thank you so much, Your Honors. Very briefly. We have no time to address the novel issues raised by the Respondent, and I would like to submit this case as argued and on the briefs. Thank you very much. Thank you. The case just argued is submitted for decision.
judges: Schroeder, Graber, Duffy